[Criminal No. 766.   Filed September 17, 1932.]

[14 Pac. (2d) 248.]

ROBERT SNEED, Appellant, v. STATE, Respondent.

Mr. John W. Mayes and Mr. V. L. Hash, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. J. R. McDougall, Assistant Attorney General and Mr. Wm. G. Hall, County Attorney, for the State.

ROSS, J.—The appellant appeals from a conviction of forcible rape alleged to have been committed on his daughter Rita Sneed, on or about September 2, 1928, in Pima county. No complaint was made against the appellant by the prosecutrix until early in March, 1931, about two years and six months after the alleged act. Appellant was informed against by the county attorney on March 4th, and was tried, beginning April 20, 1931, found guilty April 22d by a jury, and thereafter sentenced to serve a life term in the state prison.

It is not necessary to detail the testimony. It is most sordid and repulsive. Suffice it to say the prosecution managed to get before the jury, not only evidence of the act charged, but evidence that appellant had raped another of his daughters; also evidence showing, or tending to show, he was an abortionist and a bootlegger and that he had committed an assault with a deadly weapon upon his son-in-law —— Johnson, Rita Sneed's husband. The evidence concerning all these other crimes apparently got into the record without objection from appellant, except the evidence to the effect that he had raped another of his daughters, Dehlia Sneed. This daughter, under the name of Dehlia Sneed Gore, had testified for the prosecution, and, on cross-examination, was questioned as to her feelings towards her father, to which she answered: "I haven't had anything against him only what he has done and ruined my life and everything." On redirect examination by the assistant county attor-

ney the following questions, objections, rulings and answers appear:

"Q. You testified a few minutes ago that your father had ruined your life. Just what do you mean by that?

"Mr. Hash: Just a moment. We object to this because he is attempting again to get in by indirection what cannot be gotten in by direction.

"The court: Objection overruled.

"A. He treated me the same way when I was about thirteen years old, for several years, and ruined all my life and happiness.

"Mr. Houston: Q. What do you mean he treated you in the same way?

"Mr. Hash: Just a moment. We object to that on the ground it is incompetent, irrelevant, and a sufficient foundation hasn't been laid, the time and place and the circumstances.

"The court: Overruled.

"A. He had sexual intercourse with me against my will."

The rulings admitting this testimony are assigned as error. While the objections were not as explicit and definite as they might have been, we think they were sufficient to direct the court's attention to the incompetency of the evidence. When these questions were put to the witness, it was well known what the answers would be because she had theretofore volunteered the statement that her father "had treated me in the same way when I was—" and, upon motion of appellant, the court had stricken this and had charged the jury to disregard it. The fact that this witness did not like her father and felt hostile towards him was competent as bearing upon her credibility, but the reason for such ill feeling and hatred should never have been developed.

"In such cases, the proper scope for the exercise of discretion by the trial court is in limiting the

cross-examination to a disclosure of such facts only as may show the existence of hostility, and rejecting any matters which might be pertinent only to a justification of hostility on the part of the witness, for it is the existence of the feeling which is material, and not the right or wrong in the transaction which occasions it." 28 R. C. L. 612, § 201.

The reason why the witness was hostile towards appellant was not a proper subject for either direct or redirect examination by the prosecution. The elicitation by the appellant of the witness' ill-feeling towards him did not open the door to proof by the prosecution that such ill-feeling was the result of criminal acts of appellant against the witness. Otherwise it would be most dangerous to cross-examine a witness as to his bias and prejudice towards the accused, for, if such reason may be given, all kinds of extraneous and unrelated offenses might be detailed to the jury, so that the trial would be not of the particular offense charged but of many offenses not charged. The court should have sustained the appellant's objection on the ground of the incompetency of the testimony to prove any issue of the case.

In *Walker* v. *State,* 23 Ariz. 59, 201 Pac. 398, a rape case, we reversed the conviction because the prosecution got before the jury in the guise of questions the fact that accused had been guilty of raping or mistreating another woman than the prosecuting witness. We there said:

"The appellant was being prosecuted for the crime of rape committed against the person of Ruthie May Brakebill, and the perpetration of other crimes of a similar nature against other persons than she was wholly beside the issue, the crime charged—forcible rape—not being one in which the similar offense rule obtains. There could have been, therefore, no purpose in asking these questions other than to get before the jury certain statements in the guise of questions,

that would be highly prejudicial to the appellant but which the assistant county attorney must have known were inadmissible for any purpose, even though he may have been convinced they were true.''

An examination of the whole evidence satisfies us that the ends of justice demand that the appellant have a new trial. The jurors were evidently in doubt as to a proper disposition of the case, for after deliberating for a while, just how long the record does not show, they asked the court in writing ''whether or not the jury should consider a possible ulterior motive on the part of the mother and two daughters.'' The state's case depends almost wholly on the testimony of these three witnesses. If the act charged against defendant were not also incestuous, it is very improbable that a jury would give much credence to the complaint of the prosecutrix, made over two and one-half years after the act is alleged to have been committed. The fact of the kinship of the parties is no element in this case and could be rightfully considered by the jury only as it might affect the elements of force or fear.

The judgment of the lower court is reversed and the cause remanded for a new trial.

McALISTER, C. J., and LOCKWOOD, J., concur.